UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DOUGLAS WHITE, *individually and on behalf of all
others similarly situated*

             Plaintiffs,

      -against-

TOM'S OF MAINE, INC.,

            Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-00662 (OEM) (LKE)

ORELIA E. MERCHANT, United States District Judge:

Plaintiff Douglas White ("Plaintiff") brings this putative class action against defendant Tom's of Maine, Inc. ("Defendant") alleging that Defendant deceptively and misleadingly manufactured, marketed, and sold Kid's Natural Fluoride-Free Toothpaste Silly Strawberry and Toddler Natural Fluoride-Free Toothpaste Mild Fruit products ("Products") without disclosing to consumers that they are contaminated with unsafe levels of lead or arsenic. *See generally* First Amended Class Action Complaint, Dkt. 13 ("Amended Complaint" or "Am. Compl."). Defendant moves to dismiss the Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of standing and Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim.[1]

For the following reasons Defendant's Motion is granted in part and denied in part.

---

[1] Memorandum of Law in Support of Defendant Tom's of Maine, Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint, Dkt. 17 ("Motion" or "Mot."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Dkt. 19 ("Opposition" or "Opp'n"); Reply Memorandum of Law in Further Support of Defendant Tom's of Maine, Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint, Dkt. 18 ("Reply").

**BACKGROUND**[2]

**A. The Parties**

Defendant is a corporation with its principal place of business in Maine.  Am. Compl. ¶ 62.
Defendant markets, advertises, and distributes the Products throughout the United States.  *Id.* ¶ 63.

Plaintiff is a citizen and resident of Staten Island, New York.  *Id.* ¶ 60.  He brings this action
against Defendant on behalf of himself and those similarly situated "who purchased the Products
during the appliable statute of limitations period."  *Id.* ¶¶ 9, 25, 64.  Plaintiff purchased the Products
"on multiple occasions from brick-and-mortar stores located in Staten Island and gave his child
Defendant's products" including in January 2025.  *Id.* ¶ 60.

**B. Allegations of Lead and Arsenic**

Plaintiff alleges that Defendant's marketing represents that "the Products are each healthy
toothpastes for kids."  *Id.* ¶ 31.  Plaintiff contends that independent testing of a Kid's Natural
Fluoride-Free Toothpaste Silly Strawberry product that he purchased detected lead at 0.455 mg/Kg
or 455 parts per billion and arsenic at 0.068 mg/Kg or 68 parts per billion.  *Id.* ¶ 30.  Further,
Plaintiff cites two webpages allegedly reporting additional independent testing that has indicated
lead and arsenic in the Kid's Natural Fluoride-Free Toothpaste Silly Strawberry Product and lead
in the Toddler Natural Fluoride-Free Toothpaste Mild Fruit Product at "dangerous levels."  *Id.* ¶ 29
(first citing Tamara Rubin, *Tom's of Maine Kid's Natural Fluoride-Free Toothpaste in Silly
Strawberry Flavor Tests Positive for Lead and Arsenic: 2025 Lab Report Here*, LEAD SAFE MAMA
(June 14, 2025), https://tamararubin.com/2025/02/toms-of-maine-kids-natural-fluoride-free-
toothpaste-silly-strawberry; then citing Tamara Rubin, *Testing Tom's of Maine Fluoride-Free
Toddler Toothpaste in Mild Fruit Flavor for Lead, Mercury, Cadmium, & Arsenic Using*

---

[2] The following facts taken from Plaintiff's Amended Complaint are accepted as true for the purposes of Defendant's
Motion.  The Court recites only those facts relevant to resolving the pending Motion.

*Independent (Community-Funded), Third-Party Laboratory Testing*, LEAD SAFE MAMA (June 5, 2025), https://tamararubin.com/2025/04/toms-of-maine-fluoride-free-toddler-toothpaste-in-mild-fruit-flavor/). The Products' packages do not identify lead or arsenic as ingredients, nor do they include a warning that lead or arsenic is or may be included in the Products. *Id.* ¶ 32.

### C. Alleged Injuries

Plaintiff alleges that Defendant made false, misleading, and deceptive omissions regarding the Products' lead or arsenic levels, *id.* ¶ 47, and that the Products were healthy for kids, *id.* ¶ 31, that Defendant knew and intended that consumers would pay a premium for Products, *id.* ¶ 54, and thereby injured Plaintiff and similarly situated persons, *id.* ¶ 55. Specifically, Plaintiff alleges he was harmed in six ways as a result of Defendant's "false, misleading, and deceptive representation and omission" by: (1) paying a sum of money for Products that were not what Defendant represented; (2) paying a premium price for Products that were not what Defendant represented; (3) being deprived of the benefit of the bargain because the Products he purchased were different from what Defendant warranted; (4) being deprived of the benefit of the bargain because the Products he purchased had less value than what Defendants represented; (5) ingesting substances that were of a different quality than what Defendant promised; and (6) being denied the benefit of the properties of the Products Defendant promised. *Id.*

## LEGAL STANDARD

### A. Rule 12(b)(1) Motion to Dismiss

A motion to dismiss for lack of standing under Rule 12(b)(1) challenges the district court's subject-matter jurisdiction. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). At the pleading stage, "[t]he task of the district court is to determine whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"

3

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (third and fourth alterations in original) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  While the Court must take all facts alleged in the plaintiff's complaint as true and draw all reasonable inferences from the complaint, it is nonetheless the plaintiff's burden to establish standing under Article III of the Constitution.  *Id.* at 56-57 (distinguishing between facial and fact-based standing challenges).  To establish standing, a plaintiff must allege that he has "[(1)] suffered an injury-in-fact . . . [(2) that is] fairly traceable to the challenged conduct of the defendant, and [(3) that is] likely . . . to be redressed by a favorable judicial decision." *See id.* at 55 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)).

### B.  Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim may be deemed facially plausible if the alleged facts allow the court to reasonably infer "that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The principle that a court must accept the allegations in a complaint as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).

### DISCUSSION

Invoking this Court's diversity jurisdiction, Plaintiff brings four causes of action against Defendant: (1) violation of New York General Business Law § 349 ("GBL § 349"); (2) violation of New York General Business Law § 350 ("GBL § 350"); (3) negligence *per se*; and (4) unjust enrichment.  Am. Compl. ¶¶ 76-114.  Defendant moves to dismiss the complaint on the grounds

4

that: Plaintiff lacks standing "because he does not plausibly allege that the level of lead and/or arsenic purportedly found in the [Products] poses any material health risk, and therefore has failed to allege any concrete injury-in-fact"; Plaintiff's claims are expressly preempted by the Food, Drug, and Cosmetic Act 21 U.S.C. §§ 301 *et seq.* ("FDCA"); and Plaintiff has failed to sufficiently plead any cause of action as to all four of his claims. *See* Mot. at 2-3. The Court addresses each argument in turn.

### A. Standing

Defendant argues that Plaintiff has failed to allege a concrete injury-in-fact because he fails to state that the lead and arsenic levels "pose any material safety risk or rendered the [Products] unsafe, unusable, or worthless." Mot. at 4-5. Plaintiff asserts that he has successfully alleged an injury-in-fact by explaining that he paid a "price premium," that is, he "paid more for [the Products] than he would have had Defendant disclosed the presence of lead and arsenic." Opp'n at 6-8.

Injury-in-fact is a "low threshold" that "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (first quoting *WC Capital Mgmt., LLC v. UBS Secs., LLC*, 711 F.3d 322, 329 (2d Cir. 2013); then quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "[O]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium' – that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." *In re Lindt & Sprüngli (USA), Inc., Dark Chocolate Litig.*, 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *3 (E.D.N.Y. Sep. 6, 2024) (first quoting *Eidelman v. Sun Prods. Corp.*, 21-1046-cv, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022); then citing *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir.

2020) (finding that allegation that the product was inflated as a result of the defendant's deception meets the injury requirement)).

Plaintiff has met this threshold. In his Amended Complaint, Plaintiff alleges that if he knew the truth about the content of lead and arsenic in the Products, he would have paid less for them or not paid for them at all. *See* Am. Compl. ¶¶ 48, 55, 56-59 (misnumbered ¶¶ 53-56), 64 (misnumbered ¶ 61), 93 (misnumbered ¶ 90).[3] Plaintiff also alleges that the Products are marketed as "healthy toothpastes for kids" and do not include any indication of lead or arsenic on the label. *Id.* ¶¶ 31-32. As a result, Plaintiff has alleged that he paid more for the Products than he otherwise would have as a result of the alleged deceptive marketing that the Products were healthy for kids.

Defendant's arguments to the contrary are unconvincing. When asserting that Plaintiff must allege that the amount of heavy metals in the Products is harmful, Defendant relies on *In re Beech-Nut Nutrition Co. Baby Food Litigation*. Mot. at 6-7 (citing *In re Beech-Nut Nutrition Co. Baby Food Litig.*, 771 F. Supp. 3d 96, 105 (N.D.N.Y. 2025) (holding that the plaintiffs lacked standing because they did not allege that the existence of heavy metals in baby food rendered the food unsafe, unusable, and therefore, worthless), *vacated and remanded sub nom.*, *Cantor v. Beech-Nut Nutrition Co.*, 25-821-cv, 2026 WL 304246 (2d Cir. Feb. 5, 2026)). However, there, the Second Circuit vacated the U.S. District Court for the Northern District of New York's holding. *See generally Cantor v. Beech-Nut Nutrition Co.*, 25-821-cv, 2026 WL 304246 (2d Cir. Feb. 5, 2026). Specifically, the Second Circuit determined that the plaintiffs plausibly alleged an injury by stating that they would not have purchased the products or paid as much for them had they known the company failed to adequately test for heavy metals. *Id.* at *2. It also held that the plaintiffs' citation to a report and third-party testing that described the company's "systemic failure

---

[3] The Amended Complaint misnumbers its paragraphs starting after Paragraph 55. The Court accounts for the typographical error by citing to the correct paragraph number followed by the misnumbered paragraph number.

6

to deliver on its bargained-for assurances regarding its testing and safety standards" rendered their claims plausible.  *Id*.  Plaintiff has done just so here.  *See* Am. Compl. ¶¶ 29, 48, 55, 56-59 (misnumbered ¶¶ 53-56), 64 (misnumbered ¶ 61), 93 (misnumbered ¶ 90).

Furthermore, overpayment is a sufficient economic injury for Article III standing.  *See Cantor*, 2026 WL 304246, at \*3.  Plaintiff has plausibly alleged that he overpaid for the Products based on a misrepresentation that the products were safe and healthy for kids.  *See* Am. Compl. ¶¶ 48, 55, 56-59 (misnumbered ¶¶ 53-56), 64 (misnumbered ¶ 61), 93 (misnumbered ¶ 90).

Accordingly,  Defendant's motion to dismiss for lack of standing is denied.

## B.  Express Preemption

Plaintiff alleges that (1) Defendant misrepresented the Products and (2) omitted lead or arsenic on their ingredient lists: "Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain lead and/or arsenic."  Am. Compl. ¶ 92 (misnumbered ¶ 89); *see also id.* ¶ 84 (misnumbered ¶ 81).  Defendant argues that Plaintiff's misrepresentation and omission theories, upon which his GBL claims are based, are preempted by the FDCA because they seek to impose requirements on Defendant that are different from the FDCA.  Mot. at 7-8.  In response, Plaintiff argues that his misrepresentation allegations comport with the FDCA requirements which deem a cosmetic misbranded if its labeling is false or misleading.  Opp'n at 9-11.  As for his omission theory, Plaintiff contends that the FDCA requires disclosure of the lead and arsenic quantities in the Products and, therefore, does not seek to hold Defendant to any standards that are different or additional to the FDCA's labeling requirements.  *Id.* at 9-10.

Thus, the question is whether Plaintiff's state-law claims seek to impose requirements that are different from or not identical to the applicable FDCA requirements. Express preemption arises when Congress "define[s] explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).

The parties do not dispute that the Products are cosmetics. *See* Am. Compl. ¶ 103 (misnumbered ¶ 100). U.S. Code title 21, section 379s(a), which applies to cosmetics, provides:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under [the FDCA].

In other words, the FDCA preempts "any state law that provides for labeling requirements that are not exactly the same as those set forth in the FDCA and its regulations." *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020).

Plaintiff's misrepresentation allegation is not expressly preempted. The FDCA prohibits the labeling or packaging of cosmetics in a false or misleading way. *See* 21 U.S.C. §§ 331(a), 352(a)(1), 362(a). Plaintiff alleges that Defendant "misrepresents that the Products are safe for use," Am. Compl. ¶ 92 (misnumbered ¶ 89), and "healthy toothpastes for kids," *id.* ¶ 31, and that those representations are false and misleading because the Products contain lead or arsenic, which are not "safe for use" or "healthy" for kids, *see id.* ¶¶ 34-41 (summarizing the adverse effects of lead and arsenic exposure in children). Therefore, Plaintiff's claim parallels the FDCA and seeks to impose a requirement that Defendant not label the Products in a false or misleading way. *See Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 320 (S.D.N.Y. 2017) (concluding that the plaintiff's claims were not expressly preempted because she alleged the defendant's representations regarding deep whitening were false and misleading which sought to impose requirements identical to the FDCA).

Now turning to the FDCA's labeling requirements relevant to Plaintiff's omission theory. The FDCA labeling requirements for cosmetics require a manufacturer to disclose "a declaration of the name of each ingredient in descending order of predominance[.]"  21 C.F.R. § 701.3.  An "ingredient" is defined as "any single chemical entity or mixture used as a component in the manufacture of a cosmetic product."  *Id.* § 700.3(e).  Further, the FDCA provides that "[t]he provisions of this section do not require the declaration of incidental ingredients that are present in a cosmetic at insignificant levels and that have no technical or functional effect in the cosmetic."  *Id.* § 701.3(l).  "Incidental ingredients" are defined as "[s]ubstances that have no technical or functional effect in the cosmetic but are present by reason of having been incorporated into the cosmetic as an ingredient of another cosmetic ingredient" or "[p]rocessing aids[.]"  *Id.* §§ 701.3(l)(1)-(2).

While the Second Circuit has yet to address whether an omission theory is expressly preempted by the FDCA, the Court is persuaded by the reasoning of other district courts that have determined that such theories are expressly preempted.  *See Navarro v. Walgreens Boots All., Inc.*, 1:24-cv-00290-JLT-SAB, 2025 WL 1411406, at *11 (E.D. Cal. May 15, 2025) (reasoning that federal labeling regulations do not require that the labels disclose that the product might contain benzene, "so [p]laintiffs' claims, insofar as they [are] grounded on [a theory of omission] are expressly preempted"), *report & recommendation adopted*, 1:24-cv-00290-JLT-SAB, 2025 WL 3485004 (E.D. Cal. Dec. 4, 2025); *Bojko v. Pierre Fabre USA Inc.*, 22 C 6728, 2023 WL 4204663, at *4-5 (N.D. Ill. June 27, 2023) (distinguishing cases where it is alleged that a defendant has misrepresented the effectiveness of a product from where a defendant has omitted an item from the ingredients list, concluding that because the plaintiff did not allege benzene was an "ingredient" but rather that it was a "contaminant," the plaintiff's claims sought to impose a requirement in

9

addition to what federal law requires).  Here, Plaintiff has not alleged that lead or arsenic are a "component in the manufacture of" the Products; rather he asserts that the Products are "contamina[nts]." *See* Am. Compl. ¶ 45.  Plaintiff also has not alleged that lead or arsenic have any "technical or functional effect" in the Product and confirms that he does not concede that the lead or arsenic are "incidental ingredients."  Opp'n at 12.  Consequently, Plaintiff fails to allege that lead and arsenic are "ingredients" and, thus, Plaintiff has not plausibly alleged that Defendant is required, under the FDCA, to include lead or arsenic in the Products' labels.  Thus, Plaintiff's claim, if successful, would impermissibly impose an additional requirement on what the FDCA already requires.

Accordingly, to the extent Plaintiff alleges the labels are misleading because they misrepresent the Products as safe and healthy, Defendant's motion to dismiss based on preemption is denied.  However, to the extent Plaintiff's claims rely on the omission of lead and arsenic from the Products' ingredients list, Defendant's motion to dismiss based on preemption is granted and they are dismissed.

### C.  GBL § 349 and GBL § 350 Misrepresentation and Deceptive Practice Claims

Plaintiff claims that Defendant violated GBL § 349 by "misleadingly, inaccurately, and deceptively" advertising and marketing the Products to consumers, Am. Compl. ¶ 83 (misnumbered ¶ 80), and by failing to disclose that the Products contain lead or arsenic, which is materially misleading, and that Defendant made those statements and omissions "willfully, wantonly, and with reckless disregard for the truth," *id.* ¶ 84 (misnumbered ¶ 81).  Plaintiff alleges that Defendant violated GBL § 350 for the same reasons.  *Id.* ¶¶ 92 (misnumbered ¶ 89), 95 (misnumbered ¶ 92).  In opposition, Defendant asserts that Plaintiff's New York GBL claims fail for three reasons: (1) that Plaintiff does not identify any false statement or material omission, Mot.

10

at 11-12; (2) that Plaintiff's omission-based GBL claims fail because he does not plausibly allege Defendant had actual or constructive knowledge of the presence of any lead or arsenic in the Products, *id.* at 12-13; and (3) that Plaintiff does not adequately plead any alleged economic injury under a price-premium theory because Plaintiff does not allege that the Products were "marketed as 'lead-free,' 'arsenic-free,' or otherwise free from elemental impurities," *id.* at 13-15.

GBL § 349 prohibits "[d]eceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[,]" N.Y. GEN. BUS. LAW § 349(a), and GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[s]" that is "misleading in a material respect," *id.* §§ 350, 350-a(1). "To successfully assert a claim under either section, 'a plaintiff must [establish] that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the [] deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)).

As discussed above, Plaintiff's omission-based claims are expressly preempted. Thus, to the extent that Plaintiff's GBL § 349 and GBL § 350 claims are based on an omission theory, such claims are dismissed, and the Court need not consider Defendant's argument that they be dismissed for failure to adequately allege knowledge. *See* Mot. at 12-13. However, Plaintiff's misrepresentation-based GBL § 349 and GBL § 350 claims are not expressly preempted. Consequently, the Court considers Defendant's arguments that Plaintiff fails to allege any false statement or material omission and has not adequately pleaded injury. *See id.* at 11-14.

11

As to Defendant's argument that Plaintiff has failed to allege a false statement or material omission, Mot. at 11-12, Plaintiff responds that he plausibly alleges that the branding conveys that the products are "safe, natural, and appropriate for pediatric use," yet fails to convey the presence of lead or arsenic, Opp'n at 14-15. To determine whether an act or advertising is misleading, the standard is whether a reasonable consumer could be misled by the alleged act, such as labeling and marketing. *See Sitt v. Nature's Bounty, Inc.*, 15-CV-4199 (MKB), 2016 WL 5372794, at *12 (E.D.N.Y. Sep. 26, 2016) (citing *Ackerman v. Coca-Cola Co.*, CV–09–0395 (JG)(RML), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010)); *See Segedie v. Hain Celestial Grp., Inc.*, 14–cv–5029 (NSR), 2015 WL 2168374, at *11-12 (S.D.N.Y. May 7, 2015) (concluding that the allegation of synthetic ingredients in foods labeled as "natural" brought "the claim of deception into the realm of plausibility"); *Colangelo v. Champion Petfoods USA, Inc.*, 6:18-CV-1228 (LEK/ML), 2020 WL 777462, at *10-11 (N.D.N.Y. Feb. 18, 2020) (explaining that there was not an unreasonable link between "biologically appropriate" label on dog food and the idea that it would contain no arsenic).

The Court is conscious that "[w]hether the labels would mislead a reasonable consumer is a question of fact for the jury." *Segedie*, 2015 WL 2168374, at *12. Therefore, at this stage, Plaintiff's allegations "bring[] the claim of deception within the realm of plausibility." *Id.* Plaintiff alleges that the Products are marketed to appeal to children by claiming the Products "are each healthy toothpastes for kids." Am. Compl. ¶ 31. Plaintiff also claims that Defendant "misrepresents that the Products are safe for use." *Id.* ¶ 92 (misnumbered ¶ 89). There is a plausible link between the belief that the Products are "healthy," or safe for children and the allegation that the Products contain potentially unsafe levels of lead or arsenic. Additionally, Defendant argues that Plaintiff fails to allege that the Products "pose any material safety risk" or cause harm to consumers and thus fails to plausibly allege that the advertising materials are false

or misleading. Mot. at 11-12. Any inquiry into whether the toothpastes pose "any material safety risk" is a question reserved for summary judgment. *See Levy v. Hu Prods. LLC*, 23 Civ. 1381 (AT), 2024 WL 897495, at *4 (S.D.N.Y. Mar. 1, 2024) (explaining that any inquiry into "safe" levels of lead is an issue of fact reserved for summary judgment).

As to Defendant's argument that Plaintiff does not plead any economic injury because he fails to allege that the Products were marketed as "lead-free" or "arsenic-free," Plaintiff responds that Plaintiff adequately pleads a price-premium theory of damages. Opp'n at 17-18. To plead an injury pursuant to either GBL § 349 or GBL § 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. A plaintiff "must plead something more than the defendant's deception; for example, that 'the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'" *Preira v. Bancorp Bank*, 885 F. Supp. 3d 562, 677 (S.D.N.Y. 2012) (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 840 N.Y.S.2d 445, 448 (App. Div. 2007)); *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 567 (S.D.N.Y. 2021) ("A price premium theory requires a plaintiff to 'allege[] that a company marketed a product as having a unique quality that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality'") (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020)); *Segedie*, 2015 WL 2168374, at *12 (finding that the plaintiffs adequately alleged that they paid a price premium by claiming that they would not have paid if the products were not labeled "natural" or "all natural").

Plaintiff alleges that he paid a premium on the Products that were misrepresented as safe for use, *see* Am. Compl. ¶ 92 (misnumbered ¶ 89), and later learned that the Products contained

lead or arsenic, *see id.* ¶¶ 11-12.  Thus, Plaintiff alleges the Products were not safe for use and did not have the marketed quality he purchased them for and that he purchased more of or paid more for the Products that he otherwise would have had they not been marketed as safe or healthy for kids.  *Id.* ¶ 64 (misnumbered ¶ 61).  Plaintiff has therefore adequately alleges a price-premium theory.  To the extent that Defendant argues Plaintiff fails to allege the existence of comparable products, *see* Mot. at 14, courts have denied motions to dismiss GBL § 349 claims despite the plaintiffs not identifying competitors or prices in their complaints, *see Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014) (collecting cases), and the same outcome is warranted here.

Accordingly, Defendant's Motion with respect to Plaintiff's misrepresentation-based GBL § 349 and GBL § 350 claims is denied.

### D.  Negligence *Per Se* Claim

Plaintiff alleges that Defendant is liable for negligence *per se* due to its violation of the FDCA, namely §§ 331, 361, and 362.[4]  Am. Compl. ¶¶ 102-06 (misnumbered ¶¶ 99-103).  In opposition, Defendant argues that the Amended Complaint fails to allege any facts showing that it violated state or federal law, Mot. at 15-16, because Plaintiff has not alleged (1) facts showing that the level of lead or arsenic is harmful, which is a requirement for adulteration, or (2) that anything on the labeling was false or misleading, which is a requirement for misbranding, Reply at 9. Plaintiff counters that he has adequately plead facts showing that the lead and arsenic caused the Products to be adulterated and that Defendant failed to warn consumers about lead and arsenic, which caused the Products to be misbranded.  Opp'n at 19.

---

[4] The Court notes that in the Amended Complaint Paragraph 106, misnumbered Paragraph 103, Plaintiff cites to 21 U.S.C. § 361 but quotes from 21 U.S.C. § 362.

As an initial matter, Plaintiff has a private cause of action for his negligence *per se* claim for Defendant's alleged FDCA violations. *Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 262 (E.D.N.Y. 1999) ("a private cause of action for per se negligence arises under New York State law upon violation of the FDCA" (citing *Ezagui v. Dow Chem. Corp.*, 598 F.2d 727, 733 (2d Cir. 1979))).

Plaintiff has plausibly alleged adulteration. The FDCA prohibits "[t]he adulteration or misbranding of any . . . cosmetic in interstate commerce." 21 U.S.C. § 331(b). U.S. Code title 21, section 361(a) defines the adulteration of cosmetics as that which "bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof." Plaintiff claims that the Products are "'adulterated' because they each contain lead and/or arsenic which are injurious to health." Am. Compl. ¶ 107 (misnumbered ¶ 104). Plaintiff alleges that lead is a "powerful neurotoxin . . . shown to reduce intelligence, and to increase the risk of mental illness, dementia, hypertension, arrhythmia, and breast cancer," *id.* ¶ 34, and is particularly harmful to children, *see id.* ¶¶ 36-41. Plaintiff alleges that arsenic has similar impacts on children. *See id.* ¶¶ 36-41. Therefore, Plaintiff has adequately pleaded that the presence of lead or arsenic in the Products "may render" them injurious to health. *See Hernandez v. Wonderful Co.*, 23-cv-1242 (ER), 2024 WL 4882180, at *8-9 (S.D.N.Y. Nov. 25, 2024) (concluding that the plaintiff adequately pleaded that the product was adulterated by pleading that the presence of PFAS may render it injurious to health).

Plaintiff has also plausibly alleged misbranding. The FDCA defines a cosmetic "misbranded" "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 362(a). Plaintiff claims the Products are "'misbranded' because their labeling is false and misleading in that they omit any mention or warning of the fact that they contain or risk containing dangerous

15

lead and/or arsenic." Am. Compl. ¶ 108 (misnumbered ¶ 105). This case differs from *Henson v. Write Med. Tech., Inc.*, upon which Defendant relies. Mot. at 15-16 (citing *Henson v. Write Med. Tech., Inc.*, 5:12-CV-805 (FJS/TWD), 2013 WL 1296388 (N.D.N.Y. Mar. 28, 2013) (granting motion to dismiss concluding that the plaintiff did not plausibly allege violations of 21 U.S.C. §§ 331(a) and 333(a)(2)). Part of the *Henson* court's reasoning was that the plaintiff failed to allege that the defendants provided inaccurate warnings for the product's intended use. *Id.* Here, however, Plaintiff does not allege that the product did not have accurate warnings. Instead, Plaintiff has concretely alleged that Defendant marketed the Products as healthy for kids, constituting at least a plausible claim that Plaintiff was misled by the Products' ingredients and "kid-safe" character. Moreover, there are material facts yet to be determined as to the potentially misleading nature of the Products' misbranding. *Hernandez*, 2024 WL 4882180, at *10 (reasoning that there were material facts concerning whether the product was misbranded that could not be decided on a motion to dismiss).

Accordingly, Defendant's motion to dismiss Plaintiff's negligence *per se* claim is denied.

### E. Unjust Enrichment Claim

Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because: (1) it is duplicative of Plaintiff's GBL claims; (2) Plaintiff fails to allege anything false or misleading that would cause any gains to be unjust; and (3) Plaintiff does not allege any unusual situation that creates an equitable obligation on Defendant. Mot. at 16-17. Plaintiff responds to Defendant's duplicity argument, stating that the elements for his GBL claims are distinct from the elements of an unjust enrichment claim. Opp'n at 19-20.

Plaintiff's unjust enrichment claim fails. To prevail on an unjust enrichment claim in New York, "a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and

(3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  While the elements of a claim under GBL § 349 and GBL § 350 are distinct from an unjust enrichment claim, *see Warner v. StarKist Co.*, 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019),[5] where unjust enrichment claims rely on the same "theory of liability" and injury as a GBL claim, courts have dismissed them as duplicative, *see, e.g.*, *Hernandez*, 2024 WL 4882180, at *10 (collecting cases); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115-16 (S.D.N.Y. 2021); *Goldemberg*, 8 F. Supp.3d at 483-84.  Here, Plaintiff's unjust enrichment claims rest upon the same theory as the price premium theory that underlies his GBL claims: that Defendant was unjustly enriched in realizing revenues from the Products to Plaintiff's detriment even though the Products were misrepresented.  *Compare* Am. Compl. ¶ 114 (misnumbered ¶ 111) ("Defendant's unlawful conduct . . . allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment,")*, and id.* ¶ 115 (misnumbered ¶ 112) (Plaintiff "conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be")*, with id.* ¶ 85 (misnumbered ¶ 82) (Plaintiff has "been injured inasmuch as [he] purchased Products that were mislabeled, unhealthy, and entirely worthless [and] received less than what [he] bargained and paid for")*, and id.* ¶ 93 (misnumbered ¶ 90) (Plaintiff has "been injured inasmuch as [he] relied upon the labeling, packaging, and advertising and

---

[5] In *Warner*, the court, out of an abundance of caution, denied the motion to dismiss the unjust enrichment claim as duplicative because the defendant did not argue that the plaintiff failed to plausibly allege facts that could support the elements of an unjust enrichment claim.  2019 WL 1332573, at *3.  Here, Defendant asserts that Plaintiff fails to plausibly allege that there was anything false or misleading, or any unusual situation that created unjust circumstances. *See* Mot. at 17.

purchased Products that were mislabeled, unhealthy, and entirely worthless [and] received less than what [he] bargained and paid for").

Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is granted and this claim is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is granted in part and denied in part. Defendant's Motion is denied with respect to standing, Plaintiff's misrepresentation-based GBL § 349 and GBL § 350 claims, and negligence *per se* claims. Defendant's Motion is granted with respect to express preemption of Plaintiff's omission-based GBL § 349 and GBL § 350 claims and unjust enrichment claim. Accordingly, Plaintiff's omission-based GBL § 349 and GBL § 350 claims and unjust enrichment claim are dismissed.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

March 11, 2026
Brooklyn, New York